UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                       :
ARGENIS SANTOS,                                        :
                                    Plaintiff,         :
                                                       :          10 Civ. 3159 (JPO)
                    -against-                           :
                                                       :          OPINION AND ORDER
ALICIA NICHOLLS, R.P.A., et al.,                       :
                                    Defendants.  :
                                                       :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

        This is a civil rights case brought pursuant to 42 U.S.C. § 1983 in which Plaintiff Argenis

Santos alleges that he was denied medical care while incarcerated at Rikers Island.  Specifically,

he alleges that Defendants—physicians, physician assistants, and other medical staff—failed to

properly and speedily provide treatment for both a cavity and an ear infection resulting from

removal of his tooth.  That ear infection caused permanent hearing loss.  Defendants have filed a

motion to dismiss pursuant to Rule 12(b)(6).  For the reasons that follow, their motion is granted.

I.      **Background**[1]

        Plaintiff is an inmate in the custody of the New York Department of Correctional

Services and Community Supervision and is currently confined in the Wyoming Correctional

Facility.  Certain defendants worked in the GMDC facility on Rikers Island during the relevant

---

[1] The following facts are taken from the operative complaint and are presumed true for purposes
of this motion.  Plaintiff also asserts a claim that his due process rights were violated when he
was improperly confined in the punitive segregation unit for 45 days.  However, he has not
served any employees of the Department of Correction.  Given that he filed the Second Amended
Complaint on April 20, 2012, dismissal of those claims for failure to prosecute is therefore
warranted at this stage in the litigation.  In any event, none of Plaintiff's allegations in the
Second Amended Complaint alter the analysis set forth in Magistrate Judge Pitman's Report and
Recommendation of January 19, 2012 dismissing the very same claims.  *See Santos v. City of
New York*, No. 10 Civ. 3159, 2012 WL 565987 (S.D.N.Y. Feb. 21, 2012).  Accordingly, all of
Plaintiff's claims arising from his confinement in the SHU are hereby dismissed with prejudice.

time period: Nicholls and Auguste as physician assistants; Tse as a physician; and Greenman as a dental provider.  Other defendants worked in the OBCC facility on Rikers Island during the relevant time period: Anim-Nance and Calvo as physician assistants; Minn, Khan, Teli, and Sargeant as physicians; and Latunji as on-site medical director.  Defendant Towner served as the physician in the West Facility on Rikers Island.

On May 21, 2009, Plaintiff was seen by Nicholls and complained of a severe toothache due to a hole in his tooth.  Nicholls prescribed him Motrin, 400mg twice a day for four days, and referred him to the on-site dental office.  On May 27, 2009, he was seen by Tse regarding the toothache and complained that he was out of medication; Tse prescribed another cycle of Motrin at a higher dosage and noted a preexisting referral to the dentist.  Plaintiff suffered "excruciating pain" between May 25 and May 27, and was unable to "eat, drink and sleep."  This prescription expired on June 1, 2009, however, and Plaintiff was forced to endure terrible pain until June 8, 2009, at which point he saw the dentist, Greenman.  Greenman concluded that the tooth could not be saved and proposed that it be removed or left in place.  It was then removed.

Greenman did not follow up with Plaintiff after the tooth removal.  As a result of the removal, Plaintiff suffered an ear infection that caused hearing loss.  On July 31, 2009, Plaintiff was seen by Anim-Nance, who noted a decrease in hearing and—in response to learning from Plaintiff that he had experienced fluid draining out of his ear—referred him to an ENT specialist. Latunji approved this referral and graded its priority value as routine.  On August 1, 2009, Plaintiff complained to Minn of pain radiating from his left ear to his right ear; Minn then prescribed 10 days of antibiotics and five days of Motrin.  On August 21, 2009, Plaintiff complained to Auguste about the month-long ear infection and ear pain; Auguste informed Plaintiff that he was scheduled to see the ENT specialist on August 25, 2009.  This consultation

was rescheduled by Calvo to August 27, 2009—but on that date, "the plaintiff did not see the ENT due to no fault of his own and was left in a state of uncertainty."

On September 2, 2009, Plaintiff told Teli that he wanted to see the ENT because he still had ear pain and was losing his hearing.  Teli told Plaintiff that he was on a list to see the specialist.  On September 13, 2009, Plaintiff told Sargeant that he was experiencing continuous ear pain and could hear little from his left ear.  Sargeant indicated that Plaintiff was on the waiting list for the ear specialist and prescribed three days of Motrin.  On September 27, 2009, Plaintiff complained about his ear situation to Khan, who prescribed Motrin, and then Plaintiff spoke again with Auguste on September 28, 2009.

On September 30, 2009, Plaintiff was seen by non-defendant Dr. Janvier, who re-submitted a consultation/referral to the ENT.  On October 8, 2009, Plaintiff was seen by the ENT specialist, Towner.  Towner prescribed 10 days of antibiotics and recommended a follow-up appointment within 4 weeks.  On November 6, 2009, an ENT appointment with Towner was ordered.  Plaintiff saw Towner again on November 12, 2009, at which point Towner prescribed medication for 30 days and submitted a referral to audiology.  The audiologist, non-defendant Dr. Kenul, saw Plaintiff on November 23, 2009.  After an examination, Kenul concluded that Plaintiff had suffered untreatable hearing loss.

Plaintiff alleges that as a result of Anim-Nance, Minn, Auguste, Calvo, Teli, Sargeant, Khan, and Latunji's "deliberate indifference to plaintiff's medical needs, pain and suffering, plaintiff was forced to continue to suffer in pain for approximately 3 months and a delay of medical treatment from 7/31/2009 to 10/8/09 . . . [causing] unnecessary pain and the [cruel] and unusual punishment of [losing] his hearing in his left ear."

## II.      Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor."  *Allaire Corp. v. Okumus*, 433 F.3d 248, 250 (2d Cir. 2006) (quotations omitted).  That said, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks and citations omitted).  The pleadings filed by *pro se* litigants merit "special solicitude."  *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994).

## III.     Discussion

### A.      Legal Standard

The Eighth Amendment to the U.S. Constitution provides that "cruel and unusual punishments [shall not be] inflicted."  U.S. Const. amend. VIII.  "That rule, applicable to the states through the Fourteenth Amendment, is violated by unnecessary and wanton inflictions of pain and suffering."  *Walker v. Schriro*, No. 11 Civ. 9299, 2013 WL 1234930, at *11 (S.D.N.Y. Mar. 26, 2013) (citations omitted).  To state an Eighth Amendment claim, a prisoner must allege

4

both (1) that he suffered a sufficiently, objectively serious deprivation and (2) that officials who caused the harm acted or failed to act with a sufficiently culpable state of mind, *i.e.*, with deliberate indifference to inmate health.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective prong of this analysis requires an assessment of the allegedly cruel and unusual conditions.  "[T]he Constitution does not mandate comfortable prisons."  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  However, prisoners may not be deprived of "basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety."  *Helling v. McKinney*, 509 U.S. 25, 32 (1993).  "Nor may prison officials expose prisoners to conditions that 'pose an unreasonable risk of serious damage to [their] future health.'"  *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Helling*, 509 U.S. at 35).  "Ultimately, to establish the objective element of an Eight Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency."  *Id.* (citations omitted).

Courts applying this objective standard have clarified that not every claim made by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.  *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).  To the contrary, a plaintiff must show conduct that is "repugnant to the conscience" or "incompatible with the evolving standards of decency that mark the progress of a maturing society."  *Estelle*, 429 U.S. at 102, 105.  As the Second Circuit has explained:

> [I]f the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious. Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain.

*Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citations omitted); *see also Glover v. Greenman*, No. 11 Civ. 9122, 2013 WL 1294698, at *5 (S.D.N.Y. Apr. 1, 2013) ("Courts in this Circuit have considered various factors in determining the existence of a serious medical condition, including: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; (3) the existence of chronic and substantial pain; and (4) adverse medical effects or demonstrable physical injury." (quotation marks and citations omitted)).  While this standard covers "condition[s] of urgency that may produce death, degeneration, or extreme pain," *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (citation omitted), it has also been interpreted to include "less serious denials [of medical attention] which cause or perpetuate pain," *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003).  Courts "will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such pain." *Id.*  Thus, when presented with denial of medical treatment claims, courts do not "require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do we require a showing that his or her condition will degenerate into a life-threatening one." *See id.*

In the specific context of dental care, the Second Circuit has held that "[a] cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (quotation marks and citations omitted); *see also id.* (finding objectively serious injury where "[t]he plaintiff in the case before us has alleged that, as the result of the defendants' actions, he suffered extreme pain, his teeth deteriorated, and he has been unable to eat properly").  Thus, even though "prisoners are not entitled to a 'perfect plan for dental care,'"

*Alster v. Goord*, 745 F. Supp. 2d 317, 333 (S.D.N.Y. 2010) (quoting *Dean v. Coughlin*, 804 F.2d

207, 215 (2d Cir. 1986)), tooth decay and cavities may qualify as sufficiently serious needs:

> Ordinarily, a tooth cavity is not a serious medical condition, but
> that is at least in part because a cavity is so easily treatable.
> Absent intense pain or other exigency, the treatment of a cavity (in
> or out of prison) can safely be delayed by the dentist's schedule or
> the patient's dread or neglect, can be subject to triage or the
> management of care, can be mitigated or repaired temporarily, and
> can be coordinated with other related conditions that need to be
> treated together.   Nevertheless, a tooth cavity is a degenerative
> condition, and if it is left untreated indefinitely, it is likely to
> produce agony and to require more invasive and painful
> treatments, such as root canal therapy or extraction . . . [B]ecause a
> tooth cavity will degenerate with increasingly serious implications
> if neglected over sufficient time, it presents a "serious medical
> need" within the meaning of our case law.

*Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000).

To establish the second element of an Eighth Amendment denial of adequate medical

care claim, a plaintiff must "show something more than mere negligence . . . ." *Farmer*, 511

U.S. at 835.   "This deliberate indifference element is equivalent to the familiar standard of

recklessness as used in criminal law."   *Phelps*, 308 F.3d at 186 (quotation marks omitted).

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact

subject to demonstration in the usual ways, including inference from circumstantial evidence, . . .

and a factfinder may conclude that a prison official knew of a substantial risk from the very fact

that the risk was obvious."   *Farmer*, 511 U.S. at 842.

In the medical context, "[i]t is well-established that mere disagreement over the proper

treatment does not create a constitutional claim."   *Chance*, 143 F.3d at 703.   "So long as the

treatment given is adequate, the fact that a prisoner might prefer a different treatment does not

give rise to an Eighth Amendment violation . . . . [N]egligence, even if it constitutes medical

malpractice, does not, without more, engender a constitutional claim."   *Id.*   In the end,

"[w]hether a course of treatment was the product of sound medical judgment, negligence, or

deliberate indifference depends on the facts of the case." *Id.*  Thus, "in certain instances a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan." *Id.* (quotation marks and citations omitted).  As the Second Circuit noted in its leading case on dental care in prison, either "outright refusal of any treatment for a degenerative condition that tends to cause acute infection and pain if left untreated" or the "imposition of a seriously unreasonable condition on such treatment" can constitute deliberate indifference on the part of prison officials.  *See Harrison*, 219 F.3d at 138.  Indeed, "[d]istrict courts in this Circuit have ruled that a one-year delay in treating a cavity can evidence deliberate indifference on the part of prison officials." *Id.* (citations omitted).  That said, where a plaintiff's claim "flows from scheduling errors and ultimately inadequate advocacy by [a doctor] on behalf of his client's medical needs," but does not reflect recklessness or deliberate conduct, that claim must be dismissed because it alleges only negligence.  *Vining v. Dep't of Correction*, No. 12 Civ. 3267, 2013 WL 2036325, at *6 (S.D.N.Y. Apr. 5, 2013).

### B.  Application of Law to Facts

Even assuming *arguendo* that Plaintiff has alleged a sufficiently serious medical condition, the Complaint must be dismissed due to Plaintiff's failure adequately to allege a culpable state of mind.  Simply put, he has not alleged facts that create a plausible inference that any defendant in this case knew of and disregarded an excessive threat to his health or safety. *See Stevens v. Goord*, 535 F. Supp. 2d 373, 384 (S.D.N.Y. 2008).  Nor can he show any departure by the medical staff from standards of sound medical judgment.  *Ruffin v. Deperio*, 97 F. Supp. 2d 346, 354 (W.D.N.Y. 2000).  At best his allegations exemplify negligence—a culpability level that cannot support an Eighth Amendment claim brought pursuant to § 1983. *Chance*, 143 F.3d at 703.

Plaintiff alleges that he was seen and treated with pain medication by Nicholls and Tse for his toothache.  Nicholls referred him to the dentist and Tse confirmed that referral.  Given that Plaintiff presented with tooth pain, these were reasonable actions; it cannot be said that their decision to prescribe Motrin for a limited period of time reflected deliberate indifference, as there is no basis for the inference that they acted with the intent of causing him pain or that they were aware of any excessive risk posed to his health by their decision.  By the same token, their choice not to schedule an immediate appointment with the dentist does not ground a finding of reckless conduct, given that Plaintiff had reported only a toothache resulting from a cavity—a painful condition, but not one so pressingly dangerous as to necessitate immediate dental care. This case is thus far afield from cases describing outright denials of care or outrageous waits across a period of many months for dental care.  *See Harrison*, 219 F.3d at 138.  At most, their failure to provide Motrin throughout this period and to schedule an earlier dentist appointment reflected negligence.  *See Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications . . . [and] the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim."); *see also id.* ("Moreover, concerning the alleged delay of 3 ½ hours between the injury and treatment, '[a]s any lay person is well accustomed, patients are frequently faced with delays in receiving medical care, particularly when, [as in this case], their medical condition is not grave.'" (quoting *Davidson v. Harris*, 960 F.Supp. 644, 648 (W.D.N.Y. 1997)).

Plaintiff's claim against Greenman fails for a similar reason.  Plaintiff does not allege that Greenman erred in performing the tooth removal or engaged in any unlawful conduct prior to or during the consultation.  Rather, he alleges that, in light of the post-procedure risks of any tooth removal, Greenman should have scheduled a follow-up appointment.  At worst, this was negligent and reflects a dispute over the proper medical care.  *See Chance*, 143 F.3d at 703.

9

By the same token, Plaintiff has failed adequately to allege that any defendant acted with deliberate indifference in responding to his hearing loss.  Anim-Nance referred Plaintiff to an ENT specialist and Latunji approved the referral with a priority level appropriate under all the circumstances.  Minn prescribed Plaintiff medication in response to his complaint of hearing loss, Auguste noted that Plaintiff was already scheduled to see an ENT four days after their conversation, and Calvo rescheduled the ENT appointment to just two days later.  At no point did any of these individuals act in any manner that rises above negligence; to the contrary, these actions do not appear even to meet that low culpability standard.

After Plaintiff did not see the ENT on August 27, 2009—through no fault of his own, but also (looking to his allegations) through no fault of any defendant in this case—he consulted with several other defendants.  Teli noted that Plaintiff was scheduled to see an ENT specialist, Sargeant echoed this observation and prescribed a brief course of Motrin, and then Khan prescribed yet another course of Motrin.  In light of the apparent severity of Plaintiff's condition, the fact that he was scheduled to see an ENT specialist, and the deference afforded to medical staff in deciding an appropriate course and pace of care, none of these defendants acted with any mental state that rises about negligence in declining to accelerate the timing or priority of Plaintiff's already-scheduled consultation with an ENT physician.  This is particularly true in light of the deference that courts afford while reviewing decisions by prison staff regarding whether and when to refer patients to specialists.  *See Stevens*, 535 F. Supp. 2d at 386.

Finally, Plaintiff's allegations do not support the conclusion that Towner acted with deliberate indifference.  Towner, the ENT specialist, prescribed 10 days of antibiotics, met again with Plaintiff just over one month after the original consultation, prescribed additional medicine, and then referred Plaintiff to an audiologist.  This is a far cry from deliberate indifference, or even from negligence; if anything, it is a quality of care equivalent to what a non-incarcerated

individual might have received.  *Cf. Fox v. Fischer*, No. 04 Civ. 6718, 2005 WL 1423580, at *3

(S.D.N.Y. June 14, 2005), *aff'd*, 242 F. App'x 759 (2d Cir. 2007).

Ultimately, this case is analogous in key respects to a recent case involving the denial of

medical care:

> Plaintiff does not allege any culpable mental state, such as recklessness or malice, on the part of Yazdonie or the Specialist. Nor does Plaintiff allege that Yazdonie or the Specialist either intended or engineered the multi-week delays that prevented timely and proper care for his injury.  The Complaint . . . suggest[s] that the Specialist had limited availability, and that timely and effective care for Plaintiff's injury fell victim to the impersonal dynamic of prison medical logistics . . . Plaintiff's claim flows from scheduling errors and ultimately inadequate advocacy by Yazdonie on behalf of his client's medical needs.  That state of affairs is unfortunate, but absent a showing of recklessness on the part of a particular actor, Plaintiff's claim cannot succeed.   At most, Plaintiff's allegations indicate that Yazdonie and the Specialist were *negligent* in failing to schedule prompt follow-ups.  *See Hernandez v. Keane*, 341 F.3d 137, 145-46 (2d Cir. 2003) ("The evidence as to the treatment of plaintiff's hand suggests at most several acts of negligence over a prolonged period.").

*Vining*, 2013 WL 2036325, at *6.  The principal difference between the claims in *Vining* and

Plaintiff's claims here is that this case also implicates a different basis for rejecting the claim of

deliberate indifference: namely, a "difference of opinion between a prisoner and prison officials

regarding medical treatment," an effort by Plaintiff to "second guess medical judgments," and a

disagreement over "the need for specialists or the timing of their intervention."  *Sonds*, 151 F.

Supp. 2d at 311.  Ultimately, even read in the light most favorable to Plaintiff, the facts alleged

in the Complaint do not plausibly allege the culpable mental states prerequisite to a finding of

deliberate indifference under the Eighth Amendment.  Accordingly, this case must be dismissed.

**IV.      Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

The Clerk of Court is directed to terminate the motion entry at Dkt. No. 81 and to close

this case.


SO ORDERED.

Dated:  New York, New York
        July 1, 2013

                                          _____
                                                  J. PAUL OETKEN
                                            United States District Judge